Original
No. LD-97-012

## MORGAN'S CASE

April 8, 1999

*Hall, Hess, Kenison, Stewart, Murphy & Brown, P.A.*, of Manchester (*Frank E. Kenison* on the brief and orally), for the committee on professional conduct.

*Jackson & Yazinski, P.C.*, of Claremont (*John J. Yazinski* on the brief and orally), for the respondent.

HORTON, J. The Supreme Court Committee on Professional Conduct (committee) filed a petition with this court to suspend the license to practice law of the respondent, Robert I. Morgan, for a period of two years based on his violations of New Hampshire Rules of Professional Conduct 1.15(a)(1), 1.15(a)(2), and 8.4(a), and Supreme Court Rule 50(2). The respondent stipulated to the violations but contested the committee's proposed sanction. The Judicial Referee (*Dickson*, J.) held a hearing on the sanction issue and concurred with the committee's recommendation. We, too, adopt the committee's recommendation but conditionally suspend it due to mitigating circumstances.

In 1994, the respondent, upon discovering a substantial shortage in his client trust account, supplemented it with his own funds, investigated the matter, and self-reported his conduct to this court. The court, in turn, referred the report to the committee, which filed a complaint. In response to the complaint, the respondent, monitored by the committee, began a "long, arduous and complicated" remedial effort lasting seventeen months. His good faith efforts to rectify the problems in his accounting system were partially ineffectual and did not meet with the committee's overall satisfaction. The committee subsequently filed the petition for suspension.

The record indicates that the respondent, a sole practitioner, maintained a single client trust account in which he held both earned and unearned client deposits. Individual client accounts were maintained within this account. The respondent paid various expenses from the client trust account. On occasion, he made expenditures for clients from the account that exceeded their respective deposits. Further, he failed to prepare proper financial records reflecting his handling, maintenance, and disposition of client funds, and failed to report discrepancies in his client trust accounting in annual certifications to this court. The respondent's noncompliant accounting methods resulted in numerous accounting errors. To compensate, and to avoid "bouncing" checks to clients, the respondent supplemented the client trust account with personal funds. None of the respondent's clients were harmed by his conduct.

The committee argues that a two-year suspension from the practice of law is appropriate. We retain the ultimate authority to

determine the appropriate sanction for a violation of the rules governing attorney conduct. *Wood's Case*, 137 N.H. 698, 701, 634 A.2d 1340, 1342 (1993). In exercising our authority, we are mindful that discipline is not intended as a mode of inflicting punishment for an offense. *Silverstein's Case*, 108 N.H. 400, 401, 236 A.2d 488, 490 (1967). Rather, "[t]he purpose of the court's disciplinary power is to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future." *Budnitz' Case*, 139 N.H. 489, 492, 658 A.2d 1197, 1199 (1995) (quotation and ellipsis omitted). The sanction we impose must be sufficient to satisfy these goals, and must take into account the severity of the misconduct and any mitigating circumstances disclosed by the record. *Welts' Case*, 136 N.H. 588, 592, 620 A.2d 1017, 1019 (1993). "The gravity of unprofessional conduct is not determined solely by the number of rules broken or by the particular rules violated, but is determined largely with reference to the attorney's behavior." *Flint's Case*, 133 N.H. 685, 689, 582 A.2d 291, 293 (1990). Every case is judged on its own facts and circumstances. *Id.*

The respondent committed serious infractions of the rules that regulate the handling of client funds by attorneys. His apparent ignorance of the rules cannot justify their violation. *See Whelan's Case*, 136 N.H. 559, 563, 619 A.2d 571, 573 (1992) (attorneys are presumed to know the rules of professional conduct). We conclude, however, that because of mitigating factors, a conditionally delayed two-year suspension, coupled with an obligation to pay costs, will protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future.

It is significant that the respondent's actions were not motivated by dishonesty, for attorney misconduct involving dishonesty reflects most negatively on the legal profession and will not be tolerated. *See Nardi's Case*, 142 N.H. 602, 606, 705 A.2d 1199, 1200 (1998). To the contrary, the respondent voluntarily reported himself to this court, made good faith remedial efforts to rectify the problems associated with his trust account, and stipulated to the facts and violations alleged against him. Moreover, he has no prior disciplinary record, and his trust account deficiencies caused no actual harm.

While we find the respondent's admittedly poor accounting methods, numerous bookkeeping errors, inaccurate client trust reporting, and commingling of funds are patently unacceptable and justified the committee's recommendation, we acknowledge that he accepted responsibility for his actions and made good faith efforts to

take corrective measures to prevent actual harm. The respondent's ameliorative conduct, viewed in its entirety, mitigates in favor of leniency.

 Accordingly, the respondent is suspended from the practice of law for two years, but the suspension will not go into effect if he establishes, within sixty days, an accounting system satisfactory to the committee; provides to the committee, quarterly, and at his own expense, a certification from a certified public accountant that all of his client trust accounting records comply with the approved accounting system and all applicable rules and regulations for the maintenance of client trust accounts; and reimburses the committee for all expenses it has incurred in the investigation and prosecution of this matter. Should the respondent fail to comply with any condition of the suspended sanction at any time during the suspension period, the committee shall notify this court and may request imposition of the sanction. In two years, the respondent may petition the committee to have his conditional suspension terminated, and the committee shall make further recommendation to this court. The conditional suspension shall remain in effect until this court issues an order terminating it.

 All concurred. *So ordered.*