Original
No. LD-2002-004

O'MEARA'S CASE

Argued: September 10, 2003
Opinion Issued: October 15, 2003

*Swope & Nicolosi, P.L.L.C.*, of Concord (*Diane M. Nicolosi* on the brief and orally), for the committee on professional conduct.

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*David A. Garfunkel* on the brief and orally), for the respondent.

NADEAU, J. On May 28, 2002, the Supreme Court Committee on Professional Conduct (committee) filed a petition with this court requesting that the respondent, Timothy A. O'Meara, be publicly censured for violation of certain rules of professional conduct. We referred the petition to a Judicial Referee (*Bean*, J.) for a hearing. The referee found by clear and convincing evidence that the respondent violated New Hampshire Rules of Professional Conduct 3.1, 3.3(a)(1), 8.4(a) and 8.4(c)

and recommended public censure. We agree with the referee's recommendation.

The following facts were agreed upon by the parties. This professional conduct case arose from divorce and custody proceedings (the underlying action) between the respondent and his former wife.

The ethics violations relate to two pleadings filed by the respondent while representing himself in the underlying action. The first was an objection to a motion to quash subpoena and motion to compel deposition testimony, arising from the following situation: The respondent indicated in a letter to his wife's attorney, Campbell Harvey, dated September 28, 2000, that he would like to depose a certain witness on October 17, 2000. He stated that if he did not hear from Attorney Harvey by October 10, 2000, he would issue a subpoena. Notwithstanding that statement, the respondent sent the Cheshire County Sheriff a letter dated October 3, 2000, enclosing a subpoena duces tecum dated October 4, 2000, to serve on the witness. The subpoena was served on October 6, 2000.

By letter dated October 4, 2000, and faxed to the respondent that day, Attorney Harvey informed him that she was unavailable for a deposition on October 17, 2000. She filed a motion to quash the subpoena on October 11, 2000.

■ The respondent objected on October 16, 2000, stating that, as he had not received a response from Attorney Harvey by October 10, 2000, he sent a subpoena on that date, when in fact he had issued the subpoena prior to that date. The committee found that the respondent incorrectly represented the date of the subpoena and that, even if it had been a mistake, he failed to correct it with the court once he learned of it. The committee alleged that this conduct violated Rules 3.3(a)(1), 8.4(a) and 8.4(c). The respondent admits the violations.

■ The second pleading was a motion to modify custody of the respondent's two minor children (custody motion). The motion contained allegations about the respondent's wife that "the Committee found to be gross embellishments on the truth lacking sound factual predicates." (Quotation omitted.) The committee found that these allegations were primarily based upon conversations the respondent had with his children and that he conceded that he "had no independent information or evidence indicating a basis for any of these allegations." (Quotation and brackets omitted.)

The committee alleged that the respondent's statements in the custody motion violated Rules 3.1, 3.3(a)(1), 3.3(a)(3), 8.4(a) and 8.4(c). The respondent admits the violations.

The referee concluded that the respondent violated: Rule 3.1 "by asserting issues without a basis for doing so that was not frivolous"; Rule 3.3(a)(1) "by making false statements of material fact to a tribunal"; Rule 8.4(a) "by violating the Rules of Professional Conduct"; and Rule 8.4(c) "by engaging in conduct involving dishonesty, deceit and misrepresentation." The referee recommended adopting the committee's proposed sanction of public censure.

As the respondent does not contest the referee's findings of violations, the only issue before us is the appropriate sanction to be applied. *See Jones' Case*, 137 N.H. 351, 357 (1993). Both the respondent and the committee argue that we should adopt the referee's recommended sanction. Nevertheless, "[w]e retain the ultimate authority to determine the appropriate sanction for a violation of the rules governing attorney conduct." *Morgan's Case*, 143 N.H. 475, 476-77 (1999). In doing so, "we are mindful that discipline is not intended as a mode of inflicting punishment for an offense"; rather, its purpose "is to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future." *Id.* at 477. Accordingly, the sanction imposed must be sufficient to achieve these goals. *Id.* Each case, however, "is judged on its own facts and circumstances," and the sanction we impose must take into account both the severity of the misconduct and any mitigating circumstances appearing in the record. *Id.*

As an initial matter, we note that "no single transgression reflects more negatively on the legal profession than a lie." *Kalil's Case*, 146 N.H. 466, 467 (2001) (quotation omitted). Thus, we have ordered disbarment for attorney misconduct involving dishonesty. *See Welt's Case*, 136 N.H. 588, 592 (1993) (citing cases). We have observed, however, that "those cases involved additional and repeated misconduct, including the respondents' failure to cooperate with the professional conduct committee." *Id.* This case, on the other hand, involves two isolated incidents of misconduct, and the referee found that the respondent "has had a cooperative attitude toward, and has made full disclosure in, the proceeding before the Supreme Court." *Cf. id.* In addition, the referee found other mitigating factors including the lack of a prior disciplinary record, personal and emotional problems experienced by the respondent due to the issues being decided in the underlying action, and the respondent's display of remorse by expression of regret and admission of his misconduct.

While acknowledging that "the responsibility to the court is certainly not diminished when a lawyer appears *pro se*," the committee found it significant that the respondent's

false statements were made in the context of a personal, highly charged and emotional proceeding in which he served as his own counsel, a circumstance that is not likely to repeat itself and one which pressures a lawyer's good judgment in a way that would not occur when involved only as an advocate.

■ Although the circumstances surrounding the respondent's misconduct may "plac[e] his malfeasance in a more sympathetic context," *Bruzga's Case*, 145 N.H. 62, 71 (2000), we stress that an attorney representing himself is held to the same standards as an attorney representing a client, particularly the standard of candor toward the tribunal. "The confidence of judges to rely with certainty upon the word of attorneys forms the very bedrock of our judicial system." *Kalil's Case*, 146 N.H. at 467 (quotation omitted). That confidence must be justified whether an attorney is appearing on behalf of a client or *pro se*.

Nevertheless, there are important differences between this case and those in which suspension was ordered for violations of the same rules the respondent violated. *See Feld's Case*, 149 N.H. 19, 30 (2002) (one year suspension); *Bruzga's Case*, 145 N.H. at 63 (one year suspension); *Kalil's Case*, 146 N.H. at 466 (three month suspension). Specifically, the respondent did not: 1) counsel another person to lie (*Feld*); 2) assert the attorney client privilege in a bad faith attempt to avoid having his client answer a deposition question (*Feld*); 3) refuse to admit his misconduct before the referee or this court (*Feld, Bruzga*); 4) play word games before the referee to attempt to justify his misconduct (*Bruzga*); 5) lie twice about threatening a *pro se* litigant in direct response to a judge's questions about the event (*Kalil*); 6) select a judicial forum in order to embarrass, harass or intimidate a third party (*Bruzga*); or 7) engage in a concerted course of unethical conduct that involved multiple incidents occurring over an extended period of time (*Feld*).

■ Given the absence of factors that justified imposition of suspension in *Feld's Case*, *Bruzga's Case* and *Kalil's Case*, and the presence of the mitigating factors found by the referee, we conclude that public censure is the appropriate sanction. In this case, "public censure will satisfy the stated purposes of protecting the public, maintaining the public confidence in the bar, preserving the integrity of the legal profession, and deterring future misconduct." *Welt's Case*, 136 N.H. at 593. Accordingly, we order public censure on all of the violations found by the referee and order the

respondent to reimburse the committee for the costs of investigating and prosecuting this matter, *see* SUP. CT. R. 37(16).

*So ordered.*

DALIANIS, J., concurred; MORRILL, BARRY and SULLIVAN, JJ., superior court justices, specially assigned under RSA 490:3, concurred.