Original
No. LD-2002-006

### KERSEY'S CASE

Argued: January 15, 2004
Opinion Issued: February 27, 2004

*James L. DeHart*, of Concord, by brief and orally, for the committee on professional conduct.

*George E. Kersey*, by brief and orally, *pro se.*

DUGGAN, J. In September 2002, the Committee on Professional Conduct (committee) petitioned this court to disbar the respondent, George E. Kersey. We referred the petition to a Judicial Referee (*Gray*, J.) who held a hearing and found, by clear and convincing evidence, that the respondent was in contempt of this court and had violated New Hampshire Rules of Professional Conduct 3.4(c) and 5.5(a). The referee recommended disbarment.

In 1991, the respondent was found to be in contempt of court in Vermont for willful violations of court orders. In September 1999, based upon the Vermont contempt order, the respondent's license to practice law in Massachusetts was suspended for three months and until he purged himself of the contempt. On September 20, 2001, on a petition for reciprocal discipline, we suspended the respondent from the practice of law in New Hampshire for a period of three months. On September 20, 2001, and again on December 19, 2001, the respondent was ordered to turn over his client files and trust accounts. On May 6, 2002, because he continued to practice law and refused to comply with the court orders to turn over his files, we held the respondent in contempt and referred the matter to the committee for proceedings concerning the appropriate sanction. *Kersey's Case*, 147 N.H. 659 (2002).

"This court has inherent authority as well as statutory authority to discipline attorneys." *Wehringer's Case*, 130 N.H. 707, 718 (1988). Attorney conduct that violates the Rules of Professional Conduct is grounds for discipline. SUP. CT. R. 37 (1)(b) (amended 2003). "Disciplinary action is not taken as a mode of inflicting punishment for an offense." *Shillen's Case*, 149 N.H. 132, 139 (2003) (quotation omitted). Rather, "[t]he purpose of the court's disciplinary power is to protect the public, maintain public confidence in the bar, and preserve the integrity of the legal profession, and to prevent similar conduct in the future." *Id.* (quotation and ellipsis omitted). "We retain the ultimate authority to determine the appropriate sanction for a violation of the rules governing attorney conduct." *Id.* (quotation omitted).

"In professional conduct matters, although we defer to the referee's factual findings if supported by the record, we retain the ultimate authority to determine whether, on the facts found, a violation of the rules governing attorney conduct has occurred and, if so, the appropriate sanction." *Id.* at 136 (quotation omitted). "We review the findings made by the referee to determine whether a reasonable person could reach the same conclusion as the referee based upon the evidence presented." *Id.* (quotation omitted). Here, the referee recommended that the respondent be disbarred for being in contempt of court and for violating the New Hampshire Rules of Professional Conduct.

First, as we previously determined in *Kersey's Case*, 147 N.H. at 663, the respondent violated this court's orders and was held in contempt of court.

Second, the referee found, and we agree, that the respondent's conduct also violated New Hampshire Rules of Professional Conduct 3.4(c)

and 5.5(a). Rule 3.4(c) provides that: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." As we found in *Kersey's Case*, 147 N.H. at 662, the respondent "willful[ly] and blatant[ly]" disregarded our orders to turn over his client files. This conduct violated Rule 3.4(c).

■ Rule 5.5(a) provides that: "A lawyer shall not practice law in a United States jurisdiction where doing so violates the regulation of the legal profession in that United States jurisdiction." As we found in *Kersey's Case*, 147 N.H. at 662, the respondent continued to practice law, despite his suspension, when he filed two pleadings with this court in an unrelated matter. This conduct violated Rule 5.5(a).

The respondent makes numerous arguments concerning the validity of his Massachusetts suspension, his justification for not turning over the files and the validity of this court's contempt orders. To the extent these arguments are intended to challenge our prior contempt findings, we addressed them in *Kersey's Case*, 147 N.H. at 662, and will not revisit them now. The contempt findings are final and not the issue before us. Thus, the only remaining issue before us is the appropriate sanction to be imposed. The committee argues that disbarment is the appropriate sanction to be imposed. We agree.

In determining the appropriate sanction, we have often relied upon the ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS (1991) (STANDARDS), for guidance. *See, e.g., Feld's Case*, 149 N.H. 19, 28 (2002), *cert. denied*, 124 S. Ct. 67 (2003); *Shillen's Case*, 149 N.H. at 139. The STANDARDS set forth the following factors a court should consider in imposing sanctions: "(a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." STANDARDS, *supra* § 3.0, at 25.

Section 8.0 of the STANDARDS addresses the appropriate sanction to be imposed, based upon the application of these factors, when a lawyer violates the terms of prior disciplinary orders. *Id.* § 8.0, at 47. According to Section 8.1:

> Disbarment is generally appropriate when a lawyer:
> (a) intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

(b) has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.

*Id.* § 8.1, at 47. The commentary further notes that the most common case involving disbarment and violations of prior discipline orders "is one where a lawyer has been suspended but, nevertheless, practices law." *Id.*

We note that RSA 311:8 (Supp. 2003) provides that: "The supreme court shall inquire . . . into any charges of . . . contempt of court against an attorney, and, upon satisfactory evidence of the attorney's guilt, shall suspend such attorney from practice, or may remove the attorney from office." Thus, the legislature has also identified disbarment as an appropriate sanction for a lawyer who has been found in contempt of court.

Before we determine what disciplinary action we will take, we must also consider mitigating factors. *See Wehringer's Case*, 130 N.H. at 721. The respondent asserts that the fact that he surrendered the client files under protest was a mitigating factor. We disagree. *Cf.* STANDARDS, *supra* § 9.4(a), at 51 (listing forced or compelled restitution as a factor that is not aggravating or mitigating). The respondent asserts that another mitigating factor was his belief that the court did not have jurisdiction over the files, and thus he was not required to surrender the files. We find that this is not a mitigating factor because, as we previously stated, "[t]he specific language of the December order belies the respondent's contention that he reasonably believed he was not required to surrender his client files." *Kersey's Case*, 147 N.H. at 662-63. Accordingly, we conclude that there are no mitigating factors in this case.

The respondent was originally subject to disciplinary action because he was held in contempt of court in Vermont. He was later found to be in contempt of this court for twice violating orders requiring him to turn over client files and for practicing law after being suspended. *Id.* In sum, the respondent was in contempt of court in his disciplinary case, which itself was based on contempt findings. The referee found, and we agree, that the respondent's conduct "is reflective not only of his contempt for the court issuing such orders but for the entire judicial system as a whole. Such conduct cannot be overlooked or treated in any manner other than . . . [by] disbarment from the practice of law." Accordingly, the respondent is hereby disbarred and is ordered to reimburse the committee for all of its

expenses, including legal fees, incurred in investigating and prosecuting this matter. *See* SUP. CT. R. 37 (16) (amended 2003).

*So ordered.*

NADEAU and DALIANIS, JJ., concurred.