Original
No. LD-2003-001

RICHMOND'S CASE

Argued: January 12, 2005
Opinion Issued: May 6, 2005

*Cook, Little, Rosenblatt & Manson, P.L.L.C.*, of Manchester (*Arnold Rosenblatt* on the brief and orally), for the committee on professional conduct.

*William M. Richmond*, by brief and orally, *pro se*.

DUGGAN, J. On March 6, 2003, the Supreme Court Committee on Professional Conduct (committee) filed a petition with this court requesting that the respondent, William M. Richmond, receive a six-month suspension from the practice of law. We referred the petition to a Judicial Referee (*Temple*, J.) for a hearing. The referee found by clear and convincing evidence that Richmond violated New Hampshire Rules of Professional Conduct 1.1(a), 1.1(b)(1), 1.1(b)(5), 1.7(a), 1.7(b), 1.8(a), 7.1(a) and 8.4(a), and recommended suspension for six months and assessment of costs. We adopt the referee's recommended sanction.

The record reflects the following facts. Richmond was admitted to the practice of law in New Hampshire in May 1996. This professional conduct matter arose from Richmond's representation of Seaton Gras and his later involvement with Gras in the formation of an Internet start-up company, Environmental Showcase, Limited (ESL). Richmond first represented Gras in 1997 in an action against Gras' former employer to collect his judgment on a wage claim. During the prior year, Gras had been terminated from his position at Global Environmental Solutions (GES), a company he formed along with three other co-venturers in 1994. Richmond collected approximately $6,000 of the $36,000 owed to Gras.

Two years later, in April 1999, Richmond represented Gras and Graham Bunce, a co-venturer in GES, in an involuntary bankruptcy action against GES. Richmond testified that he discussed the potential conflict of interest created by his joint representation of Gras and Bunce and they orally waived the conflict. Richmond, however, did not obtain a written waiver of the conflict from either client.

While representing Gras and Bunce on their bankruptcy claim, Richmond also represented Bunce in a lawsuit brought against him by Stephen Barnes, another GES co-venturer, on an unpaid promissory note. In November 1999, Bunce, without Richmond's assistance, agreed to settle the matter with Barnes. The settlement agreement required Bunce to withdraw from the bankruptcy petition against GES and cease assisting Gras in that litigation. Although Richmond did not aid Bunce in the settlement negotiations, he reviewed the settlement agreement and gave Bunce his approval, even though the settlement terms were adverse to Gras. Shortly thereafter, Richmond filed a motion for leave to withdraw from representing Gras in the bankruptcy action. The bankruptcy court permitted Richmond's withdrawal over Gras' objection.

During the same period of time in 1999, Gras and Richmond formed ESL based upon an idea that Gras developed to provide a web portal to the environmental industry. Gras was the majority shareholder and chief executive officer of ESL, while Richmond was a member of the board of directors and the Chief Operating Officer (COO). Acting as COO and corporate counsel, Richmond filed ESL's articles of incorporation, drafted corporate by-laws and advised ESL on securities matters. Over the course of his involvement with ESL, Richmond never disclosed the potential conflict of interest stemming from his roles as COO, corporate counsel, board member and shareholder. Richmond failed to obtain the board members' written consent to serve as corporate counsel and did not advise

the board to seek the advice of independent counsel regarding the potential conflicts.

In August 1999, on ESL's behalf, Richmond filed a form U-7 disclosure document with the New Hampshire Bureau of Securities Regulation (Bureau) in order to conduct a sale of up to one million dollars of common stock. The web site for Richmond's law firm suggested that he had experience in helping small businesses file direct public offerings, although Richmond had only drafted offerings that had never been filed. The Bureau completed an initial review of the form U-7 and commented on at least eighty-four items that required correction or additional disclosure. After further discussions with the Bureau, Richmond later withdrew the form U-7 on ESL's behalf. The Bureau conducted an investigation that resulted in a consent order in which Richmond, Gras and ESL admitted violating State securities laws by selling unregistered securities and selling securities without a license. *See* RSA 421-B:6 (Supp. 2004); RSA 421-B:11 (Supp. 2004). ESL agreed to pay a $7,500 administrative fine and Richmond and Gras were ordered to cease and desist from further violations of the securities laws.

Based upon these facts, the referee found that Richmond violated Rules of Professional Conduct 1.7(a) and (b) in representing Gras and Bunce without adequately identifying the conflicts of interest and obtaining both clients' consent to the representation despite the conflicts. The referee also found that Richmond violated Rules 1.7(a) and (b), 1.8(a) and 8.4(a) by forming and operating ESL while serving as corporate counsel without disclosing the potential conflict of interest and obtaining a written waiver. Finally, the referee found that Richmond violated Rules 1.1(a) and (b), 7.1(a) and 8.4(a) by issuing unregistered securities, inadequately preparing the form U-7 and misrepresenting his firm's legal services. The referee recommended that Richmond receive a six-month suspension from the practice of law and assessment of all expenses incurred by the committee.

Richmond argues that the referee applied an improper standard in evaluating his competence in securities law and in determining that his web site advertisement was false and misleading. *See* N.H. R. PROF. CONDUCT 1.1, 7.1. Although Richmond does not dispute the referee's findings of conflict of interest violations, he argues that we should impose a lesser sanction than the referee recommended based upon the severity of the offenses and the presence of several mitigating factors. The committee argues that we should adopt the referee's findings and recommended sanctions.

In professional conduct matters, we defer to the referee's factual findings if supported by the record but retain the ultimate authority to determine whether, on the facts found, a violation of the rules governing attorney conduct has occurred and, if so, the appropriate sanction. *Shillen's Case*, 149 N.H. 132, 136 (2003). We review the referee's factual findings to determine whether a reasonable person could reach the same conclusion as the referee based upon the evidence presented. *Id.* However, we review *de novo* to determine whether the referee committed errors of law. *Feld's Case*, 149 N.H. 19, 22 (2002), *cert. denied*, 540 U.S. 815 (2003).

We first address Richmond's argument that the referee incorrectly applied a "specialist" or "expert" standard when evaluating his conduct under Rules 1.1(a) and (b). He argues that under the correct standard, a "general practitioner" standard, there is insufficient evidence to support a finding that he violated these rules.

Rule 1.1(a) states, "A lawyer shall provide competent representation to a client." N.H. R. PROF. CONDUCT 1.1(a). Rule 1.1(b) establishes the minimum requirements for legal competence:

> (1) specific knowledge about the fields of law in which the lawyer practices;
> (2) performance of the techniques of practice with skill;
> (3) identification of areas beyond the lawyer's competence and bringing those areas to the client's attention;
> (4) proper preparation; and
> (5) attention to details and schedules necessary to assure that the matter undertaken is completed with no avoidable harm to the client's interest.

*Id.* 1.1(b).

▮ Richmond argues that the referee erred in relying upon the report and testimony of Alan L. Reische, the committee's expert witness on securities law, in evaluating Richmond's competency and in doing so applied the knowledge and skill of a securities law specialist in judging Richmond's conduct. We agree with Richmond that expertise in a specific area of law generally is not required in order to meet the minimum standards for competency under Rule 1.1. The ABA Model Code comments to Rule 1.1 state that "[i]n many instances, the required proficiency is that of a general practitioner.... A lawyer need not necessarily have special training or prior experience to handle problems of a type with which the lawyer is unfamiliar." *Id.* 1.1 ABA Model Code

Comments. However, "[e]xpertise in a particular field of law may be required in some circumstances." *Id.* Rule 1.1 mandates that a general practitioner must identify areas in which the lawyer is not competent and acquire sufficient knowledge about the specific area of law in which the lawyer is practicing in order to avoid harm to the client. *See id.* 1.1(b)(1), (3).

In his report, the referee noted that Richmond "lacked needed knowledge and skill concerning the operation and interplay with state and federal securities legislation" and "failed to . . . acquire the needed knowledge from other sources." Likewise, Reische testified that, in his opinion, Richmond did not have specific knowledge about securities law, failed to identify areas beyond his competence and bring these to the client's attention, and failed to pay sufficient attention to detail to avoid harm to ESL's interests. Although Richmond argues that he made reasonable efforts to learn the requirements for filing the form U-7 by contacting a staff attorney at the Bureau, Reische noted "examples throughout the form that reflect an unfamiliarity with disclosure standards and securities practice." Thus, we conclude that the referee applied the correct standard in evaluating Richmond's conduct and that the record supports the referee's finding that Richmond violated Rules 1.1(a), (b)(1) and (b)(5).

Richmond also argues that the referee erred in finding that the content of his firm's web site violated Rule 7.1. Rule 7.1 prohibits a lawyer from making a "false or misleading communication about the lawyer or the lawyer's services." *Id.* 7.1. A communication is false or misleading if it "contains a material misrepresentation of fact or law." *Id.* 7.1(a). The referee found that Richmond's web site advertised his expertise in financing and raising capital even though "he did not have any special training or experience in securities law." Richmond testified that he had previously drafted, but never filed, a registration statement for the issuance of stock with the Bureau. Thus, the record supports the referee's finding that Richmond presented a material misrepresentation of fact in violation of Rule 7.1.

Having found that Richmond violated the Rules of Professional Conduct, we next consider the appropriate sanction. Richmond argues that his violations warrant lesser sanctions than those recommended by the referee. In exercising our authority, we are mindful that discipline is not intended as a mode of inflicting punishment for an offense. *O'Meara's Case*, 150 N.H. 157, 159 (2003). Rather, its purpose "is to protect the

public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future." *Id.* (quotation omitted). The sanction we impose must take into account the severity of the misconduct and any mitigating circumstances appearing in the record. *Id.*

Although we have not adopted the ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS (1992) (STANDARDS), we look to them for guidance. *Feld's Case*, 149 N.H. at 28. The STANDARDS set forth the following factors for courts to consider in imposing sanctions: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." STANDARDS, *supra* § 3.0; *see Kersey's Case*, 150 N.H. 585, 587, *cert. denied*, 125 S. Ct. 97 (2004). In the case of multiple charges of misconduct, the ABA recommends that the sanction imposed "should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct." AMERICAN BAR ASSOCIATION, COMPENDIUM OF PROFESSIONAL RESPONSIBILITY RULES AND STANDARDS 341 (1999 ed.).

We first examine the recommended sanction for lack of competence. The STANDARDS provide that suspension is appropriate when a lawyer "engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client." STANDARDS, *supra* § 4.52. Richmond counters that a reprimand combined with probation would adequately address the purposes of discipline in this case, including preserving the integrity of the profession. *See O'Meara's Case*, 150 N.H. at 159. The referee found, and we agree, that Richmond lacked the skill and knowledge needed to practice securities law. Richmond's numerous errors in conducting ESL's stock offerings and filing the form U-7 demonstrate his lack of knowledge about securities law practice. Furthermore, Richmond violated Rule 7.1 by misrepresenting the extent of his experience in this practice area on his firm's web site. Throughout these proceedings, Richmond has maintained that he made reasonable efforts to educate himself about the regulatory process prior to filing the form U-7. The record, however, provides clear and convincing evidence that Richmond's lack of competence harmed ESL, resulting in withdrawal of the form U-7 and an administrative fine for violations of State securities laws.

In addition to violating Rules 1.1 and 7.1, Richmond admitted violating Rules 1.7 and 1.8 through his joint representation of Gras and Bunce in the

bankruptcy litigation and his role as corporate counsel for ESL. Commitment of multiple violations of the Rules of Professional Conduct is an aggravating factor that justifies an increase in the degree of discipline imposed. STANDARDS, *supra* §§ 9.21, 9.22; *cf. Feld's Case*, 149 N.H. at 29. We also consider a prior disciplinary offense, including Richmond's reprimand in 1999 for an unrelated violation of the Rules, as an aggravating factor. STANDARDS, *supra* § 9.22.

Before we determine what disciplinary action we will take, we must also consider mitigating factors. *Kersey's Case*, 150 N.H. at 588. The referee found no substantial mitigating factors and recommended that Richmond be suspended for six months. Richmond argues that the following mitigating factors support a more lenient sanction: (1) his lack of a dishonest motive; (2) his good faith effort to remedy the effects of his misconduct; (3) his cooperation with the committee; (4) the fact that he has already suffered financial loss; and (5) his remorse for his actions. *See* STANDARDS, *supra* § 9.32. We consider the evidence and weight of each of these factors in turn. *See Feld's Case*, 149 N.H. at 29.

First, Richmond points to his lack of a dishonest or selfish motive, coupled with his belief that he participated in the formation and operation of ESL as a co-venturer. *See* STANDARDS, *supra* § 9.32(b). We find, however, that Richmond acted dishonestly in misrepresenting on his web site the extent of his experience in securities law. Thus, we do not find this mitigating factor to be present.

Second, Richmond argues that by withdrawing from his representation of Gras in the bankruptcy litigation, he made a timely and good faith effort to rectify the conflict of interest that developed. However, mitigation considers whether there was a "timely good faith effort to make restitution or to rectify consequences of misconduct." STANDARDS, *supra* § 9.32(d). Richmond's withdrawal did not "rectify consequences" but merely satisfied Rule 1.16, which requires the termination of a professional relationship after a conflict of interest causes harm. *See* N.H. R. PROF. CONDUCT 1.16(a)(1). Thus, there is no mitigation.

Third, Richmond argues that he has been cooperative with the committee and was forthcoming in his testimony before the referee. *See* STANDARDS, *supra* § 9.32(e). Although we agree that Richmond cooperated with the committee's inquiries and ensuing hearings, we do not ascribe significant weight to this factor because a lawyer has a professional duty to cooperate with the committee's investigation. *See Feld's Case*, 149 N.H. at 29.

Fourth, Richmond argues that suspension is too great a sanction because he already suffered financial loss due to his involvement with ESL and suspension from practice would terminate his means of earning a livelihood. *See* STANDARDS, *supra* § 9.32(l) (recognizing "imposition of other penalties or sanctions" as a mitigating factor). However, we do not regard Richmond's financial losses resulting from his poor investment decisions as the type of penalty or sanction that would warrant mitigation. *See Wholey's Case*, 110 N.H. 449, 450 (1970) (noting fact that attorney had been subjected to fines and probation in criminal proceeding "is a circumstance to be considered but does not provide absolution from the charges made by [the] complaint"); *see also Jones' Case*, 137 N.H. 351, 359 (1993) (noting prior sanction and penalty under Rule 11 of the Federal Rules of Civil Procedure).

Finally, Richmond argues that he feels sincere remorse for his violations. *See* STANDARDS, *supra* § 9.32(m). The committee acknowledges that Richmond expressed remorse and admitted the conflict of interest violations. The referee, however, found that "Mr. Richmond has shown little appreciation for the conflicts that could arise from his multiple representation of parties" and that "[a] risk of harm is presented by Mr. Richmond's position that he may continue to offer legal services in areas in which he is not competent." Therefore, we do not find a level of remorse adequate to merit mitigation. *Cf. O'Meara's Case*, 150 N.H. at 159-60.

■ Because our review of the record reveals aggravating factors but no substantial mitigating factors, we agree with the referee's recommendation of a six-month suspension from the practice of law. In addition, we adopt the referee's recommendation that Richmond surrender his client files for inventory by a court-appointed attorney, reimburse the committee for the costs of investigating and prosecuting this matter and disclose the jurisdictions where he is admitted to practice law. *See* SUP. CT. R. 37(14)(a) (2003; amended 2003); 37(16) (2003; amended 2003); STANDARDS, *supra* § 2.8. Furthermore, we note that Richmond must satisfactorily complete the Multistate Professional Responsibility Examination in order to be reinstated. *See* SUP. CT. R. 37(12)(e) (2003; amended 2003).

Richmond is hereby suspended from the practice of law for six months. We remand to the referee to determine the costs associated with this case. The suspension shall begin thirty days from the date of this opinion or upon issuance of a decision based upon any motions for rehearing or reconsideration, whichever is later. Richmond shall have the right to resume the practice of law after the expiration of the suspension period

upon compliance with all the terms and conditions of this order. We order that Richmond may be reinstated pursuant to the procedure set forth in Supreme Court Rule 37(14)(f) (2004) regarding reinstatement.

*So ordered.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.