Original
No. LD-2005-002

WOLTERBEEK'S CASE

Argued: July 13, 2005
Opinion Issued: October 31, 2005

*Landya B. McCafferty*, of Concord, on the brief and orally, for the professional conduct committee.

*Elliott, Jasper, Auten, Shklar & Anderson, LLP*, of Newport (*Michael C. Shklar* on the brief and orally), for the respondent.

DUGGAN, J. On February 14, 2005, the Supreme Court Professional Conduct Committee (committee) filed a petition with this court recommending that the respondent, Mark E. Wolterbeek, be suspended from the practice of law for two years. We order the respondent disbarred.

The committee found the following facts. In 1995, the respondent represented Richard Schneider in his divorce. Schneider and his then-wife had owned the Village Grocery Store in Rindge since 1985, which was in the same building as the respondent's law office. In the divorce decree, Schneider was awarded the Village Grocery Store and its premises (collectively referred to as the "Village Grocer"). In late 1995, aware of Schneider's financial difficulties, the respondent advised Schneider to file for bankruptcy.

At the same time, Shawmut Bank was in the process of foreclosing on the Village Grocer and, in October 1995, held a foreclosure sale at which there were no bidders. The respondent informed Shawmut Bank of his concerns about gasoline pumps and underground storage tanks that were once located on the property. Largely due to this, Shawmut Bank became uninterested in holding record title to the property.

On October 10, 1995, the respondent, his wife and George Chapman signed a partnership agreement forming the REMY Limited Partnership (REMY). The partnership was not registered with the Secretary of State at that time. On October 30, 1995, REMY paid Shawmut Bank $25,000 for the three mortgages it held on the Village Grocer. During the negotiations with Shawmut Bank, the respondent did not reveal to Shawmut Bank that he was one of REMY's partners and instead described REMY as a "group of investors."

The respondent then drafted a quitclaim deed that Schneider signed on October 31, 1995, transferring title to the Village Grocer to REMY. Schneider and Chapman signed the deed and the respondent and his wife witnessed the signatures. Schneider was unaware that the respondent and his wife were involved in REMY.

On November 3, 1995, the respondent filed a petition with the bankruptcy court on behalf of Schneider. The petition stated that Schneider owned no real estate at the time. However, Schneider had executed the bankruptcy petition on October 27, 1995, at which time Schneider still held record title to the Village Grocer. In another section of the bankruptcy petition asking the debtor to list "all other property ... transferred either absolutely or as security within one year immediately preceding the commencement of this case," the petition stated "none." In a section of the petition concerning secured claims, the petition listed Shawmut Bank as having a mortgage on the Village Grocer in the amount of $169,276.98 and estimated the market value of the Village Grocer to be $25,000. In response to a question concerning foreclosure sales within one year preceding filing of the petition, the petition stated that Shawmut Bank had foreclosed on the Village Grocer but did not mention the quitclaim deed or that REMY had acquired the mortgages from Shawmut

Bank. In mid-November 1995, Schneider moved to Florida. On February 6, 1996, Schneider received a discharge in bankruptcy.

On April 8, 1996, REMY obtained a $75,000 loan secured by the Village Grocer from Granite Bank. The next day, REMY filed a certificate of Limited Partnership with the Secretary of State listing the respondent and his wife as general partners and Chapman as limited partner.

In the fall of 2002, Schneider moved back to New Hampshire. On October 10, 2002, he met with the respondent and signed a "Corrective Quitclaim Deed" amending the name of the grantee from "REMY Limited Partnership" to "REMY Real Estate Limited Partnership." Schneider was still unaware of the respondent's interest in REMY.

On May 13, 2003, REMY refinanced the mortgage held by Granite Bank. By the terms of the refinancing agreement, REMY received an additional loan of $125,000 secured by the Village Grocer. The following day, the respondent filed an affidavit with the Cheshire County Registry of Deeds clarifying that "REMY Limited Partnership" was the same entity as "REMY Real Estate Limited Partnership." The affidavit listed the respondent as a general partner and Chapman as a limited partner. The respondent's wife had withdrawn from the partnership. The respondent also filed the "Corrective Quitclaim Deed" with the registry of deeds.

On August 4, 2003, United States Trustee Geraldine B. Karonis filed an *ex parte* motion to reopen Schneider's bankruptcy case based upon the discovery of information not previously disclosed. Schneider first learned of the respondent's interest in REMY during subsequent discussions at Karonis' office.

On September 24, 2003, Schneider filed a complaint with the committee alleging professional misconduct by the respondent based upon the events that occurred between 1994 and 1996. On October 20, 2004, the Attorney Discipline Office (ADO) issued a notice of charges. The respondent then filed a motion to dismiss the charges, arguing they were barred by the statute of limitations. *See* SUP. CT. R. 37A(I)(i). A hearing on the motion to dismiss was scheduled for November 19, 2004. Immediately before the hearing, the respondent and the ADO entered into a stipulation that there was clear and convincing evidence that the respondent had violated Rules of Professional Conduct 1.7(b), 1.8(a), 3.3(a)(1), 8.4(c) and 8.4(a), and that the respondent should be suspended from the practice of law for two years. A hearing panel of the committee recommended a two-year suspension in a December 2, 2004 written decision. After reviewing the record, the committee adopted the panel's recommendation. The committee then filed a petition requesting that this court suspend the respondent from practicing law for two years. The sole issue before us is whether to adopt the recommended sanction.

■ In attorney discipline matters, we defer to the committee's factual findings if supported by the record, but retain "ultimate authority to determine whether, on the facts found, a violation of the rules governing attorney conduct has occurred and, if so, the appropriate sanction." *Richmond's Case*, 152 N.H. 155, 158 (2005). In deciding the appropriate sanction, we consider the case on its own facts and circumstances. *Flint's Case*, 133 N.H. 685, 689 (1990).

We look to the ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS (1992) (STANDARDS) for guidance. *Feld's Case*, 149 N.H. 19, 28 (2002), *cert. denied*, 540 U.S. 815 (2003). The STANDARDS list the following factors for consideration in imposing sanctions: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." STANDARDS, *supra* § 3.0; *see Kersey's Case*, 150 N.H. 585, 587, *cert. denied*, 125 S. Ct. 97 (2004).

In applying these factors, the first step is to categorize the respondent's misconduct and identify the appropriate sanction. After determining the sanction, we consider the effect of any aggravating or mitigating factors on the ultimate sanction. STANDARDS, *supra*, Methodology. Here, the respondent's misconduct falls into three categories.

■ First, the parties stipulated that acquiring the three mortgages from Shawmut Bank and becoming a holder of notes on which Schneider was an obligor was a conflict of interest in violation of Rule 1.7(b). They stipulate that even if Schneider could have waived the conflict of interest, the respondent did not disclose its existence to Schneider, making it impossible for him to consent "after consultation and with knowledge of the consequences." N.H. R. PROF. CONDUCT 1.7(b)(2). According to the STANDARDS, suspension is warranted "when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." STANDARDS, *supra* § 4.32. Disbarment is warranted "when a lawyer, without the informed consent of client(s) ... engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client." STANDARDS, *supra* § 4.31(a). The critical distinction between suspension and disbarment is whether the conflict of interest is between the lawyer and the client and whether the lawyer acts with the intention to benefit himself. Here, the respondent violated his duty to his client. The parties do not stipulate to the respondent's mental state, but the respondent's acts of deceiving Schneider in pursuit of personal financial gain strongly suggest that he intended to benefit himself

at Schneider's expense. Based upon the respondent's misconduct, disbarment is the appropriate sanction.

■ Second, the parties stipulated that by acquiring the three Village Grocer mortgages from Shawmut Bank on behalf of REMY without disclosing his involvement in that purchase to Schneider, the respondent violated Rule 1.8(a). They also stipulated that the respondent violated this rule by drafting the quitclaim deed whereby Schneider transferred title in the Village Grocer to REMY while Schneider was unaware of the respondent's involvement in REMY. Further, the parties stipulated that the respondent's failure to disclose his interest in REMY to Schneider constituted dishonesty, fraud, deceit and misrepresentation in violation of Rule 8.4(c). According to the STANDARDS, suspension is appropriate when a lawyer "knowingly deceives a client, and causes injury or potential injury to the client." STANDARDS, *supra* § 4.62. Suspension is also appropriate "when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public or the legal system." STANDARDS, *supra* § 7.2. A lawyer may be disbarred "when [he] knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client." STANDARDS, *supra* § 4.61. Disbarment may also result "when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system." STANDARDS, *supra* § 7.1. The facts show that the respondent violated his duty to his client and deceived Schneider with the intention of benefiting himself. The respondent's actions warrant disbarment under the STANDARDS.

Finally, the parties stipulated that the respondent failed to disclose material facts and provide complete answers to questions in the bankruptcy petition in violation of Rule 3.3(a)(1). According to the STANDARDS, suspension is appropriate "when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding." STANDARDS, *supra* § 6.12. The STANDARDS advise that disbarment is appropriate "when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding." STANDARDS, *supra* § 6.11.

■ The respondent violated his duty to the legal system by submitting a misleading petition and failing to subsequently correct it. The facts in the record support that the respondent did not make misleading statements and omissions through mere oversight, but did so with knowledge of the bankruptcy petition's misleading nature and that his actions caused the office of the United States Trustee to decide to reopen Schneider's bankruptcy case. Based upon the respondent's misconduct toward the bankruptcy court, suspension is appropriate.

■ We next consider the effect of mitigating or aggravating factors on the sanction. The parties stipulate that the respondent's cooperation with the disciplinary process coupled with genuine remorse and complete acceptance of responsibility for his misconduct should be a mitigating factor. We have held that a lawyer has a professional duty to cooperate with the committee's investigation and that absent a showing of genuine remorse, cooperation with the disciplinary process alone is not a mitigating factor. *Feld's Case*, 149 N.H. at 29-30. Where deceit is involved, "a lawyer must admit to his professional misconduct to truly demonstrate remorse." *Id.* at 30. In the stipulation, the respondent admits to his misconduct toward Schneider and the bankruptcy court. The committee states in its brief that, "[the respondent] deserves credit for his cooperation with the disciplinary process because his cooperation was coupled with an expression of 'genuine remorse' ... and complete acceptance of responsibility for his misconduct." We acknowledge that the respondent displayed genuine remorse by admitting his misconduct in the stipulation, and recognize this to be a mitigating factor.

■ The respondent urges us to recognize the passage of time since his misconduct as a mitigating factor. The respondent cites no authority for this position and describes passage of time as "one mitigating fact not addressed by the ABA Standards." Given the lack of authority, and on the facts of this case, we do not find the passage of time to be a mitigating factor.

The parties stipulate to the following aggravating factors: prior disciplinary offenses, multiple offenses and dishonest or selfish motive. We agree that these factors are aggravating.

■ We have found that prior disciplinary offenses constitute an aggravating factor. *See Richmond's Case*, 152 N.H. at 161. The respondent received a warning in October 1997 and a reprimand in December 2003 for misconduct unrelated to this case. On March 15, 2005, he received a six-month suspension associated with an unrelated case based upon his failure to competently represent clients, failure to appear, failure to keep his

clients informed of the status of their case and failure to manage their case with due diligence. N.H. R. PROF. CONDUCT 1.1(a), 1.1(b), 1.4(a), 1.3(a), 8.4(a). We note that the misconduct involved in the representation of Schneider occurred before the respondent had been warned and sanctioned for the other incidents. Nonetheless, the fact that the respondent has had other disciplinary actions constitutes an aggravating circumstance.

██ The respondent's multiple offenses in this case are another aggravating factor. See STANDARDS, *supra* § 9.22(d); *Richmond's Case*, 152 N.H. at 161. The respondent violated New Hampshire Rule of Professional Conduct 1.7(b) by failing to avoid conflicts of interest and failing to obtain his client's informed consent. He violated Rule 1.8(a) by acquiring the three mortgages and becoming a holder of notes owed by his client. He violated Rule 3.3(a)(1) by intentionally deceiving the bankruptcy court in submitting materially misleading responses to questions in the petition. Finally, the respondent violated Rule 8.4(c) by deceiving his client and the bankruptcy court for his own personal gain. In sum, the multiple offenses here constituted a premeditated scheme to deceive his client and the bankruptcy court in order to acquire the property.

██ We have held that dishonest or selfish motive is an aggravating factor. See, e.g., *Coffey's Case*, 152 N.H. 503, 514-15 (2005). This is the most serious aggravating factor in this case. Over the course of his representation of Schneider, and as recently as 2003, the respondent engaged in a course of misconduct motivated by his self-interest. His willingness to deceive his client and the bankruptcy court for his own financial gain resulted in misconduct injurious to his client, the bankruptcy court and the legal profession.

██ We have considered the respondent's misconduct and the aggravating factors of prior disciplinary sanctions, multiple rule violations and dishonest and selfish motive and find that disbarment is appropriate. While we recognize that the respondent displayed genuine remorse by admitting to and taking responsibility for past misconduct, we find that disbarment is the only sanction that attains the goals of the attorney discipline system to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession and prevent similar conduct in the future. *Feld's Case*, 149 N.H. at 28. Disbarment is the only sanction that properly informs the public and the bar that a lawyer who engages in a course of deceitful conduct toward a client and a tribunal over a span of several years with the intent to benefit himself will receive the harshest sanction.

This sanction is commensurate with sanctions imposed in our prior cases. *See, e.g., Coffey's Case,* 152 N.H. 503 (attorney disbarred for convincing an elderly client experiencing mental deterioration to convey to him property worth over $200,000 as payment for clearly excessive legal fees); *Astles' Case,* 134 N.H. 602 (1991) (attorney disbarred for using fraudulent means to secure financing on own home and failing to subsequently disclose misconduct); *Basbanes' Case,* 141 N.H. 1 (1996) (attorney disbarred for presenting false testimony to marital master in client's divorce proceeding).

In ordering disbarment, we have taken into account that the disposition was negotiated by the respondent and the ADO and approved by a hearing panel and the committee. We recognize that stipulations in attorney discipline proceedings may have a value similar to negotiated agreements in civil proceedings and plea bargains in criminal proceedings. We have recognized that agreements made between counsel in civil cases are "scrupulously kept ... and of inestimable value in the administration of justice." *Hayes v. State,* 109 N.H. 353, 355 (1969) (quotation omitted). In criminal cases, plea bargains "[save] the State and any witnesses the burdens of a trial and may result in a more timely disposition of [the case]." *State v. Woodsum,* 137 N.H. 198, 199-200 (1993). Likewise, agreements in attorney discipline cases may reduce burdens on the attorney discipline system and complainants and result in more timely disposition of cases.

■ Attorney discipline proceedings, however, are not civil or criminal in nature. *State v. Merski,* 121 N.H. 901, 909 (1981); Strength, *Attorney Disciplinary Proceedings: Civil or Criminal in Nature?,* 19 J. LEGAL PROF. 257, 263-65 (1994). Accordingly, we are not bound by the terms of agreements. Although we have accorded considerable weight to the fact that this disposition was negotiated by the respondent and the ADO, this court not only has inherent and statutory authority to discipline attorneys but the responsibility to exercise independent judgment in the process. We conclude that in light of the aggravating and mitigating factors and the egregiousness of the misconduct, disbarment is warranted.

We order the respondent disbarred and order him to reimburse the attorney discipline system for all expenses incurred in the investigation and enforcement of discipline in this case. SUP. CT. R. 37(19).

*So ordered.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.