Original
No. LD-97-013

FARLEY'S CASE

Argued: February 13, 2002
Opinion Issued: March 8, 2002

*Anthony A. McManus*, of Dover, on the brief and orally, for the committee on professional conduct.

*Michael J. Farley*, of Manchester, on the brief and orally, *pro se.*

DALIANIS, J. The Supreme Court Committee on Professional Conduct (committee) petitioned to disbar the respondent, Michael J. Farley. Following a hearing, the Judicial Referee (*Manias*, J.) found by clear and convincing evidence that the respondent violated New Hampshire Rules of Professional Conduct (Rules) 1.15(a)(1), 1.15(a)(2), 1.15(b), 3.4(a), 3.4(c), 8.4(a) and 8.4(c) and recommended disbarment. The respondent concedes that he engaged in the conduct of which he is accused and that his conduct violated the Rules. He argues, however, that several mitigating factors justify a less severe sanction than disbarment.

The respondent's violations primarily relate to his client trust account and financial record keeping. In December 1996, the court suspended him from practice and enjoined him from "transferring, assigning, hypothecating, or in any manner disposing or conveying any assets of clients, whether real, personal, beneficial, or mixed." Less than two weeks after the court's order, the respondent began writing a series of six checks made payable to himself or cash totaling $1,310.

In February 1997, the court froze the respondent's client trust account and appointed a certified public accountant to audit all of the respondent's client accounts.

The accountant was never able to complete a meaningful audit of the respondent's accounts because the respondent never provided him with the requisite records.

The accountant was able to discover, however, that shortly before the court suspended him from practice, the respondent settled a personal injury claim for one of his clients for $9,000, and deposited the money in his client trust account. Thereafter, the respondent withdrew $3,000 from the account as his fee for service, but never paid the balance to his client. After withdrawing these funds and the $1,310 referenced above, the account lacked sufficient funds to pay what the client was owed. When the account was frozen, it was out of trust by more than three thousand dollars.

In April 1997, the respondent participated in a meeting at the office of the New Hampshire Attorney General regarding his situation, at which he admitted that his financial records were in disarray and that he had not been keeping his accounts on a regular basis for more than a year. As the investigator from the attorney general's office testified, "He basically stated that in '96 he realized that he was conducting his financial recordkeeping in his law practice using yellow sticky notes all over everything."

The respondent also admitted to making improper withdrawals from his trust account.

■ Because the respondent concedes that his conduct violated the Rules, the only inquiry is the appropriate sanction. *See Jones' Case,* 137 N.H. 351, 357 (1993). In determining the appropriate sanction, our focus is "not on punishing the offender but on protecting the public, maintaining public confidence in the bar, and preventing similar conduct in the future." *Astles' Case,* 134 N.H. 602, 605 (1991). Generally, disbarment is the appropriate sanction for misusing client funds. *Connolly's Case,* 127 N.H. 786, 790 (1986).

■ The respondent argues that we should impose a more lenient sanction because, among other things, he had no dishonest or "venal" intent, and because at the time, he was clinically depressed. While we consider mitigating factors when determining appropriate disciplinary action, the existence of such factors does not necessarily preclude disbarment for protection of the public. *Eshleman's Case,* 126 N.H. 1, 6 (1985).

478

■ Even after considering the factors the respondent urges us to consider, we conclude that disbarment is the appropriate sanction in this case. "[E]ven if an attorney is under the greatest of personal or financial pressures, there is no justification for commingling and converting client funds." *Doherty's Case*, 142 N.H. 446, 452 (1997). The respondent not only converted his client's funds for his own use, but did so after having been ordered by the court not to dispose of or convey his clients' assets in any way.

■ The respondent also argues that his use of his client's funds was not knowing. Ignorance is no excuse. Had he complied with Rule 1.15(b) by delivering the settlement proceeds to his client promptly, and had he complied with Rule 1.15(a) by safeguarding the funds and maintaining sufficient financial records, he would have realized that the assets belonged to his client.

The respondent also argues that the referee erroneously understated the extent of his disability. We need not reach this issue because we hold that, in any event, disbarment is the appropriate sanction.

Accordingly, we order disbarment on all the violations charged and further order that the respondent reimburse the committee for all of its expenses, including legal fees, incurred in investigating and prosecuting this matter. *See* SUP. CT. R. 37(16).

*So ordered.*

NADEAU and DUGGAN, JJ., concurred.