Original
No. LD-98-013

## DOUGLAS' CASE

Argued: January 23, 2002
Opinion Issued: April 12, 2002

*Boynton, Waldron, Doleac, Woodman & Scott, P.A.*, of Portsmouth (*Charles B. Doleac* and *David C. Klingebiel* on the brief, and *Mr. Doleac* orally), for the professional conduct committee.

*DesFosses Law Firm*, of Portsmouth (*Sven D. Wiberg* on the brief and orally), for the respondent.

*Caroline Douglas*, of Concord, on the brief, *pro se*.

DUGGAN, J. In September 1998, the Supreme Court Committee on Professional Conduct (committee) filed a petition with this court requesting that the respondent, Caroline G. Douglas, be suspended from the practice of law for a period of two years based on violations of the New Hampshire Rules of Professional Conduct (Rules). The petition was referred to a Judicial Referee (*Gray*, J.) for hearing and recommendation. The referee found, by clear and convincing evidence, that the respondent violated Rules 1.15(a)(1), 1.15(c) and 8.4(a). The referee rejected all other allegations of professional misconduct and recommended that the respondent's license be suspended for six months. Neither the committee nor the respondent accepted the referee's report. We agree with the referee and impose the recommended sanction.

In November 1994, Walter Foster retained the respondent to represent him in his divorce proceeding. Foster was previously represented by another attorney in this same matter. Prior to the respondent's involvement in the case, the Superior Court (*Mangones*, J.) had entered a temporary order requiring that approximately $17,000 be held in escrow until further order of the court. Foster's prior attorney was the escrow agent for the funds and upon his termination as counsel, he transferred the escrow money to the respondent. The respondent subsequently placed the funds in an escrow account in December 1994.

In January 1996, the superior court issued a decree of divorce awarding the funds being held in escrow to Foster and his ex-wife in equal shares. Foster was concerned about the escrow funds and had conversations with the respondent concerning their status. Under the divorce decree, Foster's ex-wife owed him money stemming from her workers' compensation claim

and he believed the money he owed her from the escrow account was subject to a set-off. The funds remained in escrow until February 22, 1996, when the respondent withdrew the funds and used them to pay Foster's outstanding legal fees at her law firm. The respondent did not inform Foster that she had withdrawn the funds until approximately three weeks later. In fact, a letter written by the respondent dated March 20, 1996, gave the clear impression that the funds were still being held in escrow almost a month after they had been withdrawn.

Prior to being informed that the funds had already been withdrawn, Foster sent the respondent a series of letters pertaining to the escrow funds. On March 3, 1996, Foster sent a letter stating: "The Escrow account. Please cash for me. I will pay you balance of what I owe you." On March 9, 1996, Foster sent another letter stating: "Let's clean out the escrow account. Please have money available for me on Wednesday. Please have it available in cash." On March 13, 1996, the client sent a third letter stating: "With regards to the escrow account. You and I already discussed closing it out on a number of occasions. The last occasion being two weeks ago. This has also been delayed for over two months now . . . ." In this letter, Foster also included suggestions for distributing the entire $17,000 between himself and the respondent's firm.

On March 20, 1996, after learning that the respondent had already withdrawn the funds, Foster became upset and sent the respondent a letter detailing his concerns. Attorney Joseph Hoppock ultimately replaced the respondent as counsel for Foster and shortly thereafter, he learned of the withdrawals of the escrow account. Because the divorce decree required that the escrow funds be distributed between Foster and his ex-wife in equal shares, the superior court held a hearing on the handling of the escrow account. At the hearing, the respondent explained that she was entitled to withdraw all of the escrow funds because she believed they were subject to a set-off. The respondent also testified that she received a letter from Foster authorizing the withdrawal of funds from the escrow account dated March 13, 1996, and that she received this letter "approximately ten days *prior* to the escrow funds being removed from the account." (Emphasis added.) This letter, however, was written by Foster approximately three weeks *after* the funds had been withdrawn by the respondent. The attorneys present at the hearing immediately informed the judge that the respondent had actually received the letter ten days after withdrawing the escrow funds.

In May and June 1998, the committee held a hearing with regards to charges against the respondent concerning her handling of the escrow account and her testimony at the superior court hearing. The committee found that the respondent had violated Rules 1.15(a)(1) and 1.15(c) by

withdrawing funds from the Foster account without the express or implied authority to do so, and in direct contradiction to the superior court's final divorce decree and the terms under which she had been appointed escrow agent. The committee further found that the respondent violated Rule 8.4(c) by making false statements of material fact to the superior court. Finally, the committee found these violations established a violation of Rule 8.4(a), which provides that professional misconduct occurs when a lawyer "violate[s] or attempt[s] to violate the Rules of Professional Conduct . . . ." N.H. R. PROF. CONDUCT 8.4(a).

After holding a hearing, the referee determined that the respondent violated Rules 1.15(a)(1), 1.15(c) and 8.4(a), but found no violation of 8.4(c). The committee did not accept the referee's finding that the respondent did not violate Rule 8.4(c) and objected to the recommended sanction of suspension for six months. The respondent did not accept the referee's finding that she violated Rules 1.15(a)(1), 1.15(c), and 8.4(a) and also objected to the recommended sanction. The respondent further claimed that the referee's refusal to allow her "to present her own, full testimony in her case" violated her right to due process under the State and Federal Constitutions.

We first address the argument that the referee violated the respondent's due process rights by denying her the opportunity to retake the stand to offer "rebuttal" testimony. We analyze her claim under the State Constitution first. *See State v. Ball*, 124 N.H. 226, 231 (1983). "Because the State Constitution is at least as protective as its federal counterpart, we will not conduct a separate federal analysis but will cite federal law only as an analytical aid." *Chandler v. Bishop*, 142 N.H. 404, 409 (1997) (citation omitted).

■ In order to establish a violation of Part I, Article 15 of the State Constitution, the respondent must show that the testimony she was precluded from introducing would have been material and favorable to her defense in ways not merely cumulative of other evidence. *State v. King*, 146 N.H. 717, 720 (2001). After Attorney Charles Douglas testified, the respondent requested to retake the stand in order to rebut the "numerous flat out misstatements" he made during his examination. Although the referee refused to allow the respondent to testify for the purpose of attacking Attorney Charles Douglas' credibility, the respondent was allowed to retake the stand in order to rebut his testimony pertaining to the escrow account. Because the respondent was not precluded from introducing evidence that was material and not merely cumulative, we hold that she was not denied due process.

We turn next to the alleged error in the judicial referee's findings of facts. The standard of review for findings made by a judicial referee in attorney discipline hearings is whether a reasonable person could reach the same decision as the referee based upon the evidence presented at the hearing. *Basbanes' Case*, 141 N.H. 1, 4 (1996).

The committee maintains that the referee's finding that the respondent did not violate Rule 8.4(c) is not reasonable based on the evidence submitted at the hearing. Rule 8.4(c) provides: "It is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation." "An intentional misrepresentation requires a misstatement of fact for the purpose of inducing another to act or to refrain from action in reliance upon it." *Carpenito's Case*, 139 N.H. 168, 174 (1994) (quotations omitted).

In ruling that the respondent did not violate Rule 8.4(c), the referee stated that during the superior court hearing on the withdrawal of the escrow funds, the respondent incorrectly represented to the court that she was authorized by her client to withdraw funds from the escrow account. The referee did not find, however, that the respondent's representations were intentionally designed to mislead the court. As such, the referee concluded that the respondent did not violate Rule 8.4(c) by deliberately attempting to mislead the court or to induce it to act or refrain from acting in reliance on the misrepresentations.

■ We conclude that a reasonable person could have found that the respondent's conduct did not violate Rule 8.4(c). At the hearing before the judicial referee, the respondent explained that she may have referenced the wrong letter but that nonetheless, she had her client's authority to withdraw the funds and apply them to legal fees. She claimed that because she was not prepared to testify, she used the letter "on the spot" and mistakenly believed that the March 13, 1996 letter authorized her to disburse the escrow funds in the manner in which she did. Although there is no doubt that the respondent incorrectly stated that the March 13, 1996 letter authorized her to withdraw funds from the escrow account, the record is sufficient to support the referee's finding that the respondent's representations were not intentionally designed to mislead the court.

The committee also maintains that regardless of the respondent's contention that she may have referenced the wrong letter, the respondent improperly represented to the superior court and the referee that she had her client's authorization to withdraw the escrow funds and apply them in full to legal fees. Thus, the committee contends that the respondent violated Rule 8.4(c) by representing that Foster authorized her to withdraw the escrow funds. We disagree.

A reasonable person could determine that the respondent did not testify that she had Foster's authority to withdraw the escrow funds in an attempt to convince the court that she was justified in taking the funds. The letter dated March 13, 1996, acknowledges that Foster and the respondent discussed closing the escrow account on several occasions. Thus, despite the fact that the referee ultimately determined that Foster did not authorize the withdrawal of the escrow funds, there is sufficient evidence to support a finding that the respondent may have erroneously believed that she was authorized by Foster to withdraw funds from the escrow account and therefore did not testify with the deliberate intent of misleading the court.

The respondent contends that the referee erred in finding that she violated Rules 1.15(a)(1) and 1.15(c). Rule 1.15(a)(1) provides that: "Property of clients or third persons which a lawyer is holding in the lawyer's possession in connection with a representation shall be held separate from the lawyer's own property. Funds shall be deposited in one or more clearly designated trust accounts . . . ." Rule 1.15(c) provides that:

> When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

Both of these rules require attorneys to deposit all cash property of clients in clearly designated separate trust accounts. *See Doherty's Case*, 142 N.H. 446, 449 (1997).

The referee found that the respondent "does not deny that she removed the funds from escrow without either Court approval or consent of opposing counsel" and that "[s]he simply finds nothing wrong with her actions . . . ." Because there was a dispute as to whether Foster would be required to pay his ex-wife her portion of the escrow account, the respondent took the position that "since Mr. Foster would have gotten the proceeds anyway, there was no real harm done by her withdrawal of the funds prematurely." The respondent also testified that because she knew well in advance that the financial matters would turn out as they eventually did, that fact alone should absolve her from fault. The referee disagreed and instead concluded that "[i]t would be difficult to find a more clear violation of Rule 1.15(c)."

■ Pursuant to Rule 1.15(c), whenever there is a dispute pertaining to funds in escrow, the portion in dispute must be kept separate until the dispute is resolved. Here, there was a dispute as to whether Foster should receive the entire amount of the escrow funds. Rather than leaving the funds in the escrow account until the dispute was resolved, the respondent withdrew the entire escrow account and applied them to Foster's legal fees. Because this conduct violates the express provision of Rule 1.15(c) requiring that attorneys keep the portion of funds in dispute separate until the dispute is resolved, we hold that a reasonable person could find, by clear and convincing evidence, that the respondent violated Rule 1.15(c).

■ With regards to the respondent's violation of Rule 1.15(a)(1), the referee did not make any separate factual findings supporting his determination that the respondent violated this rule. The referee, however, granted the committee's request for a ruling of law that clear and convincing evidence existed that the respondent knowingly violated the express terms of the escrow account and therefore violated Rule 1.15(a)(1) because she "was fully aware of the terms and conditions of the escrow account and because she disbursed the entire amount of the escrow funds on February 23, 1996, prior to authorization by her client, and without providing any portion of said funds to Sally Foster." We agree with the referee's conclusion that by withdrawing the escrow funds without her client's permission and by failing to keep the funds segregated until an accounting occurred, the respondent violated Rule 1.15(a)(1).

Finding no error in the referee's factual determinations, we now turn to the question of sanctions. The committee argues that a two-year suspension from the practice of law is appropriate. "We retain the ultimate authority to determine the appropriate sanction for a violation of the rules governing attorney conduct." *Morgan's Case*, 143 N.H. 475, 476-77 (1999). In exercising our authority, we are mindful that discipline is not intended as a mode of inflicting punishment for an offense, but rather "the purpose of the court's disciplinary power is to protect the public, maintain public confidence in the bar, preserve the integrity of the legal profession, and prevent similar conduct in the future." *Id.* at 77 (quotations and brackets omitted). "The sanction we impose must be sufficient to satisfy these goals, and must take into account the severity of the misconduct and any mitigating circumstances disclosed by the record." *Id.*

In cases involving an attorney's misuse of client funds, we often take severe disciplinary action. *See Doherty's Case*, 142 N.H. at 450. "A lawyer's obligation to refrain, at the least, from misuse of a client's property must stand among the most insistent of professional norms." *Id.* (quotation and ellipses omitted).

The referee found by clear and convincing evidence that the respondent breached her fiduciary duty owed to her client. In recommending a sanction, the referee noted that the respondent improperly withdrew funds "not with any malicious intent to do wrong but rather under the Respondent's startlingly erroneous belief that her actions in doing so were not at all inappropriate." Consequently, the referee recommended that the respondent be suspended from practicing law for a period of six months or until she completed a course in ethics and in the study of the Rules of Professional Conduct, whichever period was longer.

In arguing that the respondent should be suspended from practice for two years, the committee compares this case to *Nardi's Case*, 142 N.H. 602 (1998), in which we disbarred an attorney for violating the terms of an escrow account and misleading a client. The committee maintains that the respondent's conduct "goes far beyond that involved in *Nardi's Case*," and that "based on the record, [the respondent's] conduct in this matter warrants, at the very least, a two-year suspension from the practice of law." We disagree that the respondent's conduct goes "far beyond that involved in *Nardi's Case*." In *Nardi's Case*, the attorney's ethical lapses were fundamental and stemmed from two completely separate transactions involving a violation of his escrow duties and making an intentional misrepresentation to a client. *See id.* at 605. In contrast, in this case it was determined that the respondent did not make any intentional misrepresentations and that her violations of the rules stemmed from her erroneous belief that she was authorized to withdraw the escrowed funds.

The respondent argues that the court does not have an adequate basis for imposing any sanction, and this case should be dismissed. The respondent contends that the committee's "claim that money was applied to legal fees without W. Foster's authorization is frivolous, specious and without merit" and that she should not be subject to sanctions because Attorney Charles Douglas, her legal partner, ordered her to withdraw the funds. Even if the latter is true, the respondent is not freed from her responsibility. *See* N.H. R. PROF CONDUCT 5.2 (absolving a lawyer of responsibility only if "that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty"). Under the facts of this case, there was no "arguable question of professional duty" because Rules 1.15(a)(1) and 1.15(c) clearly articulate that the funds should have been maintained in the escrow account.

▇▇ We conclude that the respondent's inability to comprehend that her conduct violated her ethical obligation to safeguard her client's funds mandates a sanction. Rule 1.15(a)(1) requires lawyers to safeguard the property of their clients and third persons and Rule 1.15(c) requires

lawyers to keep escrow funds separate until the resolution of a dispute. In this case, the respondent was the escrow agent of funds stemming from her client's divorce proceeding. Under the divorce decree, the respondent was explicitly required to disperse the funds equally between her client and his ex-wife. In light of the dispute concerning the entitlement of her client's ex-wife to the escrow funds, the respondent should have maintained the funds in the escrow account until resolution of the dispute. Instead, as the referee aptly stated, "[T]he Respondent put her client's demands and her own wishes before her professional responsibilities." We agree with the referee's recommendation that the respondent be suspended from the practice of law for a period of six months, or until she can provide this court evidence that she has successfully completed a course in ethics and the understanding of the Rules of Professional Conduct, whichever is longer. Furthermore, the respondent shall have the right to resume the practice of law only upon compliance with all the terms and conditions of this order and pursuant to the procedure set forth in Supreme Court Rule 37(12) regarding reinstatement, which includes the requirement that the respondent produce evidence of satisfactory completion of the Multistate Professional Responsibility Examination. *See* SUP. CT. R. 37(12)(e). The respondent shall also reimburse the committee for the costs and expenses of investigating and prosecuting this matter, properly apportioned to reflect that the committee was not successful on all of the violations it alleged. *See* SUP. CT. R. 37(16). We remand to the referee to determine the costs awarded. *See Bruzga's Case,* 145 N.H. 62, 73 (2000).

*So ordered.*

HOLLMAN and FITZGERALD, JJ., superior court justices, specially assigned under RSA 490:3, concurred.