# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. LD-2021-0012, <u>In the Matter of Robert M. Fojo, Esquire</u>, the court on February 25, 2022, issued the following order:**

On December 17, 2021, the Attorney Discipline Office (ADO) filed a petition in this court for Attorney Robert M. Fojo's immediate interim suspension from the practice of law. In its petition, the ADO relied upon Supreme Court Rules 37(16)(f) and 37(9-A). On the same day, the ADO served a copy of the petition on Attorney Fojo and his counsel by email. Attorney Fojo's counsel was simultaneously notified of the petition through the court's electronic filing system. Neither Attorney Fojo nor his counsel immediately responded to the petition.

On December 21, the court issued an order imposing an interim suspension under Supreme Court Rule 37(16)(d) and (f) and notifying Attorney Fojo of his right to request a prompt hearing on whether the suspension should be lifted. That same day, Attorney Fojo requested an immediate hearing and moved to stay the suspension. On December 22, we granted his request for a hearing and stayed his interim suspension for the limited purpose of allowing him to represent a client at a criminal sentencing hearing that day. His suspension otherwise remained in effect.

On December 23, we appointed retired Superior Court Justice Larry M. Smukler as referee to conduct a hearing on the issue of whether Attorney Fojo's interim suspension from the practice of law is necessary for the protection of the public and the preservation of the integrity of the legal profession. <u>See</u> <u>Sup. Ct. R.</u> 37(16)(d), (f); <u>Gallant's Case</u>, 170 N.H. 528, 533-34 (2017). The hearing was held at the Supreme Court on January 4, 2022, and proceeded by offers of proof. In support of its proffer, the ADO submitted over 100 documentary exhibits. Attorney Fojo, represented by counsel, submitted a hearing memorandum and several exhibits. He did not request an evidentiary hearing.

On January 12, the referee submitted a fourteen-page report to the court. In the Referee's Recommendations, Judge Smukler stated as follows:

> The evidence clearly supports the ADO's petition, and demonstrates that Fojo's conduct violated Supreme Court Rule 50, as well as Rules of Professional Conduct 1.3, 1.4, 1.5, 1.15, 3.3, and 8.4(a) and (c).

Among other things, Fojo failed to perform monthly reconciliations of his IOLTA account, failed to maintain client ledgers, was significantly "out of trust" in at least three client matters, and regularly left earned fees in his IOLTA account for extended periods of time, resulting in commingling. . . . Nonetheless, Fojo annually certified to the New Hampshire Bar Association that he performed such monthly reconciliations, that he was not "out of trust" at any point, and that he was otherwise compliant with Rules 50 and 1.15.

In addition, Fojo failed to keep his clients reasonably informed about the status of their cases and failed to act with reasonable diligence by not promptly disbursing funds due to them or their creditors. More important, Fojo misappropriated client funds and then lied about it to his clients and to the ADO. . . .

. . . .

Simply put, Fojo's conduct is not the conduct of an attorney who has made unintentional bookkeeping errors and who has earnestly sought to prevent harm to his clients by correcting those errors. Nonetheless, even if Fojo's conduct could fairly be construed as a series of negligent bookkeeping errors, a suspension would still be appropriate.

See Sup. Ct. R. 50(1) (explaining that "IOLTA" stands for "Interest on Lawyers Trust Accounts program" and that IOLTA accounts are "for clients' funds"). The referee made this recommendation to the court: "Because the ADO has sustained its burden of demonstrating by a preponderance of the evidence that an interim suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession, I recommend that the interim suspension remain in place."

Attorney Fojo challenged the referee's findings, rulings, and recommendation, and, on January 26, we ordered the parties to file briefs by February 10. On February 7, we scheduled oral argument for February 15. Both parties filed briefs, and Attorney Fojo, relying upon Supreme Court Rule 37(9-B)(g), filed a petition for reinstatement. We heard oral argument on February 15.

Ordinarily, we defer to the factual findings of a referee in a lawyer discipline case, reviewing only whether a reasonable person could have reached the same decision as the referee. Gallant's Case, 170 N.H. at 534. However, we may give less than ordinary deference to the factual findings of the referee in this case because he decided the issues on offers of proof, based upon a paper record,

and all of the documents and proffers upon which he based his decision are available for our review.  Id.; see Lawrence v. Philip Morris USA, 164 N.H. 93, 96-97 (2012).  As to the referee's legal rulings, our review is de novo and we "retain the ultimate authority to determine whether suspension is necessary under Rule 37(16)(f)."  Gallant's Case, 170 N.H. at 534.

We first address Attorney Fojo's argument that his due process rights were violated because the procedures employed in imposing the interim suspension did not comport with Supreme Court Rule 37.  Central to this argument is his contention that Rule 37(16) is not a stand-alone, independent basis for an immediate interim suspension but, rather, must be read as supplementary to suspension procedures outlined in other provisions of Rule 37.

Rule 37 provides specific procedures for immediate suspension under certain circumstances.  See, e.g., Sup. Ct. R. 37(9)(a), (i) (providing for immediate suspension upon proof that attorney has been convicted of a serious crime or has been indicted for any felony); Sup. Ct. R. 37(9-A)(a) (authorizing interim suspension of an attorney alleged to have "engaged in conduct that poses a substantial threat of serious harm to the public"); Sup. Ct. R. 37(9-B)(a) (authorizing summary suspension of an attorney who fails to cooperate with the ADO's investigation of a matter "alleging serious misconduct").  Attorney Fojo argues that, when the circumstances fall within one of these rules, the specific procedures set forth in the applicable rule must be followed because they constitute the due process required.  We disagree.  These specific procedures do not supplant our authority to take immediate disciplinary action against an attorney who is credibly alleged to have engaged in conduct that poses a substantial threat of serious harm to the public, yet may have cooperated with the ADO investigation, and who has not been convicted of a serious crime or indicted for a felony.  Attorney Fojo overlooks the true sources of our authority to discipline attorneys — the common law, statutes, and the State Constitution — from which Rule 37 is derived.

We have inherent and statutory authority to discipline attorneys.  Petition of Brooks, 140 N.H. 813, 817 (1996); see also RSA 311:8 (2015); RSA 490:4 (2010).  Moreover, Part II, Article 73-a of the State Constitution provides that the court shall "make rules governing the administration of all courts in the state and the practice and procedure to be followed in all such courts."  N.H. CONST. pt. II, art. 73-a; see Petition of Tocci, 137 N.H. 131, 135 (1993) ("[T]he judicial branch possesses all the authority necessary to perform its judicial functions . . . .").  Because the judicial branch requires a qualified and ethical bar to perform its functions, we have the inherent authority to establish procedures to ensure that members of the bar meet those standards.  Tocci, 137 N.H. at 135;

see also Opinion of the Justices (Judicial Salary Suspension), 140 N.H. 297, 299 (1995) (recognizing that Part II, Article 73-a "vest[s] discipline of the legal profession" in this court).

These authorities confirm that "[t]he task of supervising and disciplining attorneys within this State falls squarely upon the shoulders of this court." Brooks, 140 N.H. at 817 (quotation omitted). Accordingly, our inherent authority over attorney discipline includes the "power to take reasonable and expeditious action in the suspension or removal of members of the bar for the protection of the community." Barnard's Case, 101 N.H. 33, 34 (1957).

Rule 37 must be read in the context of our inherent authority. Indeed, Rule 37(16)(f) codifies our longstanding view that our responsibility for attorney discipline advances the purpose of "the protection of the public, as well as . . . the maintenance of public confidence in the bar as a whole." Harrington's Case, 100 N.H. 243, 244 (1956) (quotation omitted); see Sup. Ct. R. 37(16)(f) (providing that the court may discipline attorneys "as the court deems necessary for the protection of the public and the preservation of the integrity of the legal profession"). Likewise, Rule 37(16)(d) codifies our inherent power to take swift disciplinary action. Compare Sup. Ct. R. 37(16)(d) ("The court may make such temporary orders as justice may require either with or without a hearing. Respondent attorney shall be entitled to be heard after any ex parte order."), and RSA 311:8 (recognizing the court's power to "inquire in a summary manner into" allegations of fraud or malpractice against an attorney (emphasis added)), with Barnard's Case, 101 N.H. at 34 (recognizing our inherent authority to take "expeditious" disciplinary action). Given this court's long-established and plenary authority over attorney discipline — indeed our unique and non-delegable duty to protect the public — we reject Attorney Fojo's argument that Rule 37(16) cannot serve as an independent basis for an interim suspension. Nor will we read Rules 37(9-A) and (9-B) as abrogating or constraining our inherent ability to act quickly when necessary to protect the public and to preserve the integrity of the legal profession and public confidence in the bar. Therefore, Attorney Fojo's reliance on Rules 37(9-A) and (9-B) is misplaced.

Contrary to Attorney Fojo's claim that the interim suspension process did not comport with Rule 37, he was, in fact, afforded the process required by the applicable rule — Rule 37(16). Sup. Ct. R. 37(16)(d), (f). The ADO did not act precipitously. Prior to petitioning this court for an immediate suspension, the ADO investigated Attorney Fojo for several months and collected extensive documentary evidence of his misconduct. Following our interim suspension order, Attorney Fojo was given the opportunity to request a post-suspension hearing before a referee. See Sup. Ct. R. 37(16)(d); Reiner's Case, 152 N.H. at 166. He did make such a request, and the hearing occurred promptly — two

weeks after issuance of the order.  See Reiner's Case, 152 N.H. at 167 (interpreting Rule 37(9)(i) as requiring a post-suspension hearing to be scheduled within thirty days of the interim suspension order).

During the January 4 hearing in front of Judge Smukler, the ADO was required to prove, by a preponderance of evidence, that the suspension was necessary for the protection of the public and the preservation of the integrity of the legal profession.  See Sup. Ct. R. 37(16)(f); Reiner's Case, 152 N.H. at 167.  The referee issued his fourteen-page recommendation eight days after the hearing.  Attorney Fojo challenged the referee's determination; we ordered briefing and heard oral argument.  These procedures comply with Rule 37(16).

Attorney Fojo also contends that, even if, contrary to his arguments, the court has inherent power to take immediate disciplinary action under certain circumstances, those circumstances were not present in this case.  He maintains that, as of December 21, 2021, when the interim suspension was ordered, there was no emergency that justified an immediate interim suspension because "nothing had changed" since the end of September 2021.  We disagree.

Attorney Fojo, despite knowing that the ADO was investigating his misappropriation of client funds deposited in his IOLTA account, as well as deficient IOLTA record-keeping, closed his IOLTA account on October 27.  Attorney Fojo did not alert the ADO of this fact until November 16, and he brought it to the ADO's attention at that time only because the ADO had recently subpoenaed the records for that account.  On November 17, the ADO learned that Attorney Fojo had not yet opened a new IOLTA account.  Even after being prompted on November 18 by the ADO to open a new IOLTA account, Attorney Fojo did not do so until December 13, at which time he deposited $100 of his own money.

Although Attorney Fojo was entrusted with maintaining the funds of at least one client during this time period, for the six-week period between October 27 and December 13, he did not have an IOLTA account.  Attorney Fojo was, therefore, "out of trust" with respect to at least one client.  Indeed, Attorney Fojo admitted as much when, on November 19, he represented to the ADO — at a time when he did not have an IOLTA account — that "the remaining funds . . . from the [client's] settlement will have to be allocated to satisfy the [outstanding] lien."  All of this conduct occurred after the ADO had reason to believe Attorney Fojo had previously lied to it about this same client's funds.  Thus, by mid-December, the ADO had a well-founded concern that, although Attorney Fojo was aware of the ADO's investigation into his misappropriation of that client's funds and for being "out of trust" with regard to her account, his misconduct was ongoing and posed a continuing danger to the public and to the integrity of the

legal profession.  Under these circumstances, it was both reasonable and necessary for the ADO, in the discharge of its responsibilities, to bring the matter to our attention by seeking an interim suspension.  Accordingly, we conclude that the circumstances — as they evolved in November and December 2021 — justified the ADO's decision to petition for interim suspension at that time and, likewise, supported our interim suspension order.

We now turn to Attorney Fojo's argument that we should lift his suspension because the referee's report and recommendation is unsupported and "rife with error."  (Bolding omitted.)  To continue an interim suspension, we must conclude that the suspension is necessary for both: (1) "the protection of the public"; and (2) "the preservation of the integrity of the legal profession."  Sup. Ct. R. 37(16)(f); see Gallant's Case, 170 N.H. at 533-34, 536-37.  The ADO's burden, at this early stage in the disciplinary process, is not to prove that Attorney Fojo committed professional misconduct that warrants imposition of final discipline, but, rather, to show by a preponderance of evidence that the ADO is likely to succeed on the merits of its disciplinary case, and that the interim suspension is necessary to protect the public and to preserve the integrity of the legal profession.  Cf. Gallant's Case, 170 N.H. at 536-37 (discussing the ADO's burden when an attorney's interim suspension is based on Rule 37(9)(i)).

"The injury to the public and to the profession is substantial whenever an attorney is dishonest."  Id. at 538.  "No single transgression reflects more negatively on the legal profession and erodes public confidence in the bar more completely than a lie."  Id. (quotations omitted).  "This is because the privilege of practicing law includes the concomitant responsibilities of truth, candor and honesty."  Id. (quotation omitted).  In addition, a lawyer's obligation to "refrain, at the least, from misuse of a client's property must stand among the most insistent of professional norms."  Coddington's Case, 155 N.H. 66, 70 (2007) (quotation omitted).  In cases involving an attorney's misuse of client funds, we often take severe disciplinary action.  See id. (collecting cases involving disbarment or suspension of attorneys for misuse of client funds or "out of trust" IOLTA accounts).

The record provides ample support for the referee's determination that the ADO proved, by a preponderance of evidence, that this is not a case of an attorney who is "out of trust" due merely to mismanagement or oversight; rather, this case involves a series of lies to clients and the ADO and ongoing misuse and misappropriation of client funds.  Most egregious is Attorney Fojo's conduct with respect to a client's $40,000 settlement check.  On December 14, 2020, Attorney Fojo's client settled her personal injury claim.  On December 16, the insurance carrier issued Attorney Fojo a $40,000 settlement check payable to "FOJO LAW PLLC AS ATTORNEY(S) FOR [the client]."  On December 23, the check was

endorsed and deposited into Attorney Fojo's IOLTA account. Between December 23, 2020 and February 5, 2021, Attorney Fojo made five separate disbursements to himself totaling $12,000. Attorney Fojo not only twice failed to respond to the client's inquiries about her settlement during early 2021, in May 2021, he lied to her about having received the check, saying that the insurance carrier "didn't issue the check or it wasn't sent out" and that the carrier would "re-issue the check." Attorney Fojo did not remit any payment to the client until August 2021 — after having been "out of trust" with respect to this client for an extended period.

There is also evidence that Attorney Fojo lied to the ADO about the status of this account. In July 2021, the ADO notified Attorney Fojo that the client had filed a grievance alleging misuse of her funds and that the ADO had docketed the grievance as a complaint. In response, Attorney Fojo represented to the ADO that he "believed for a long time that the [$40,000] check had not arrived," that he directed his assistant to reach out to the insurance company, and that he was "led to believe the check was lost and had to be re-issued." However, there is no evidence in the record that he or anyone on his behalf ever contacted the insurance company. Indeed, the insurance company claims adjuster attested that the company had no contact with Attorney Fojo's office after issuing the settlement check in December 2020. Further, as described above, there is evidence that Attorney Fojo was aware in December 2020 that the check had arrived — he made disbursements to himself shortly after the check was deposited.

Finally, Attorney Fojo's misconduct continued even after his suspension. On December 21, 2021, this court issued the interim suspension order enjoining Attorney Fojo from "further use of his IOLTA account" and also from "transferring . . . any assets of clients." Nonetheless, on December 22, Attorney Fojo withdrew approximately $4,500 from his IOLTA account. In doing so, Attorney Fojo violated our order of December 21.

Our independent review of the record confirms the referee's conclusion that the ADO met its burden of proving, by a preponderance of evidence, that the interim suspension is necessary for the protection of the public and the preservation of the integrity of the legal profession. See Sup. Ct. R. 37(16)(f); Reiner's Case, 152 N.H. at 167. Accordingly, Attorney Fojo shall remain suspended from the practice of law in New Hampshire pending further order of this court.

In light of Attorney Fojo's constitutionally protected interest in his license to practice law, Reiner's Case, 152 N.H. at 165, and our ruling that the interim suspension will, absent further order of the court, remain in place pending

final disposition of disciplinary proceedings, the attorney discipline system shall prioritize this case. The ADO shall notify the court if proceedings in the attorney discipline system cannot be concluded within four months of this order. We are aware that this expedited process will require the modification or waiver of certain procedural rules set forth in Rule 37A. The ADO or Attorney Fojo may request that the court order such a modification or waiver. See Sup. Ct. R. 1; see also Sup. Ct. R. 37A(III)(Preface) ("As good cause appears and as justice may require, the professional conduct committee may waive the application of any rule under this section."). To that end, the ADO and Attorney Fojo are directed to confer regarding procedural deadlines and submit a schedule to the court no later than March 4.

On February 10, 2022, Attorney Fojo petitioned for reinstatement under Rule 37(9-B). See Sup. Ct. R. 37(9-B)(g). For the reasons set forth above, that motion is denied.

So ordered.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**