# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. LD-2022-0009, <u>In the Matter of Justin P. Nadeau, Esquire</u>, the court on April 16, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> Sup. Ct. R. 20(2). On December 8, 2022, the Supreme Court Professional Conduct Committee (PCC) filed a petition recommending that the respondent, Justin P. Nadeau, be disbarred. <u>See</u> <u>Sup. Ct. R.</u> 37A(III)(d)(2)(D)(iv). We order the respondent disbarred.

I.    <u>Procedural Background</u>

The conduct code violations at issue arise from the respondent's representation of Shawn Fahey. An investigation into the respondent's conduct began after Attorney Christopher Hawkins, who represents Fahey in a civil action brought against the respondent, filed a referral with the Attorney Discipline Office (ADO) on April 30, 2019. The ADO issued a notice of charges on December 6, 2019. The ADO subsequently uncovered evidence of trust account malfeasance and evidence of misconduct relating to the respondent's role as treasurer of a charity, prompting the ADO to move to amend the notice of charges on January 7, 2021. In addition, the respondent's behavior following notification of the disciplinary investigation into the Fahey matter led to additional charges that the respondent failed to preserve evidence, falsified evidence provided to the ADO, and failed to comply with discovery and pre-trial orders.

Following a seven-day evidentiary hearing, a panel of the Hearings Committee issued a 96-page report on January 4, 2022, finding that the respondent violated nine New Hampshire Rules of Professional Conduct (Rules). Following a two-day sanction hearing, the hearing panel issued a report recommending disbarment. In October 2022, the PCC held oral argument on both the findings of Rules violations and the recommended sanction.

The PCC concluded that the record supported by clear and convincing evidence the factual findings set forth in the hearing panel report. <u>See</u> <u>Sup. Ct. R.</u> 37A(III)(d)(2)(c). The PCC also found, by clear and convincing evidence, that the respondent had violated Rules 1.5, 1.7, 1.8, 1.15, 3.3, 3.4, 5.3, 8.1, and 8.4. After considering the duties violated, the respondent's mental state, and the actual or potential harm caused by his conduct, the PCC found that the

baseline sanction was disbarment and, after considering the aggravating and mitigating factors, concluded that the mitigating factors did not warrant a downward departure to a lesser sanction. The PCC filed its recommendation with this court, as required for any recommended sanction greater than a suspension of six months. See Sup. Ct. R. 37(16)(b). Thereafter, the PCC filed the record of its proceedings.

II. Analysis

The respondent asserts that: (1) the PCC's findings of Rules violations are not supported by clear and convincing evidence; (2) the recommended sanction is disproportionate and does not serve the purposes of attorney discipline; and (3) the recommended sanction is not in keeping with this court's prior cases. In attorney discipline cases, we defer to the PCC's factual findings if supported by the record, but retain ultimate authority to determine whether, on the facts found, a violation of the rules governing attorney conduct has occurred and, if so, the sanction. Salomon's Case, 171 N.H. 694, 700 (2019).

A. Rules Violations

We first consider the PCC's finding by clear and convincing evidence that the respondent violated the Rules. See Sup. Ct. R. 37A(III)(d)(2)(c). The PCC found that the respondent violated Rules 1.5, 1.7, 1.8, 1.15, 3.3, 3.4, 5.3, 8.1, and 8.4. These violations were based upon clear and convincing evidence that the respondent

> engag[ed] in a business transaction with a client after establishing an attorney-client relationship[,] fail[ed] to obtain a written, informed waiver of conflicts of interest, . . . fail[ed] to provide a written statement to the client of the division of fees resulting from settlement of a contingent-fee litigation matter[,] . . . commingl[ed] personal funds with client funds and [was] out of trust in multiple client matters[,] . . . submitt[ed] false Trust Account Compliance Certificates for multiple reporting periods stating he was never out of trust in his client trust account[,] . . . fail[ed] to supervise the conduct of his bookkeeper with respect to the transfer of funds in and out of client trust accounts[,] . . . sign[ed] his wife's name to a legal instrument without her authorization, and . . . through multiple acts of fraud, deceit, and misrepresentation[,] [and,] [f]ollowing notice of the disciplinary investigation, . . . fail[ed] to preserve evidence, falsif[ied] evidence provided to the ADO, and fail[ed] to comply with discovery and pre-trial orders.

Because we agree with the PCC that the record supports — by clear and convincing evidence — that the respondent violated Rules 3.4(b) and 8.1(a),

2

and because we find that these violations warrant disbarment, we need not address the other violations.  <u>See</u> <u>Budnitz' Case</u>, 139 N.H. 489, 490 (1995).

             1.  <u>Rules 3.4(b) and 8.1(a)</u>

Rule 3.4(b) provides that a lawyer "shall not . . . falsify evidence."  <u>N.H. R. Prof. Conduct</u> 3.4(b).  Rule 8.1(a) provides that a lawyer "in connection with a disciplinary matter, shall not . . . knowingly make a false statement of material fact."  <u>N.H. R. Prof. Conduct</u> 8.1(a).

After the disciplinary matter was initiated, the respondent twice agreed to preserve electronic data relating to Fahey's representation.  The first time he did so was in a May 8, 2019 letter to Hawkins.  The second time was approximately one year later, in an email to disciplinary counsel.  During the course of this disciplinary matter, the respondent produced paper files including three conflict of interest letters dated October 24, November 29, and December 13, 2018, that the respondent purportedly sent to Fahey.  The respondent later produced a letter dated January 15, 2019, enclosing a "settlement summary," and a March 13, 2019 letter attaching an "Acknowled[]gment and Agreement" dated March 12, 2019 (collectively "the disputed documents").  (Capitalization and underlining omitted.)

The ADO four times requested that the respondent produce these documents in their native electronic formats, which is the original source format of a document, in this case, the Microsoft Word document.  Ultimately, the ADO moved to compel production of the disputed documents in their native format.  For the first time, the respondent informed the ADO that the documents were produced in the form of a Portable Document Format (PDF), rather than Word format, because it was his "office practice" to delete the Word versions of client letters after they were printed, mailed, and saved as PDFs.  The hearing panel granted the ADO's motion to compel on January 21, 2021.

In response, in lieu of producing the native electronic files, the respondent produced PDF files purporting to show screenshots of the metadata associated with the disputed documents.  These showed "created" and "modified" dates for each PDF that matched the face date of the document.  They also included a screenshot of Word metadata for one document, but the underlying PDF files and Word file from which the metadata screenshots were taken were not produced.  This prompted the ADO to move to compel the production of the respondent's computers so that they could be forensically examined for evidence regarding the disputed documents.  The motion was granted.

Because the respondent had disposed of his law office computer, the paralegal computer and the Nadeau fileserver were delivered to the offices of James Berriman, who had been engaged as an expert by the ADO to determine

whether the disputed documents had actually been created on or near their "face dates" (that is, the date that appears on the letters themselves), or whether they were created later, and then backdated. Berriman was retained by the ADO to: (1) examine the disputed documents to assess their authenticity; (2) conduct forensic examinations of the computers produced by the respondent for evidence relating to the origin, history, and authenticity of the disputed documents; and (3) provide a report summarizing his findings and conclusions to a reasonable degree of forensic certainty.

The ADO submitted Berriman's report into evidence, and Berriman testified at the hearing in this matter. Berriman made a number of findings and reached conclusions regarding the disputed documents, each of which supports the hearing panel's factual findings that: (1) the disputed documents that the respondent produced to the ADO contain false face dates to suggest that the respondent sent the documents to Fahey during the course of his representation of her, but which, in fact, were created after the ADO investigation was initiated; (2) in June 2019, the respondent downloaded, installed, ran, and later deleted two applications whose specific purpose is to alter metadata; (3) in February 2021, the respondent created multiple versions of altered screenshots of the properties windows for the PDFs of the disputed documents and produced to the ADO screenshots showing altered "external" metadata with "created" dates matching the face dates for each disputed document; (4) the PDFs themselves contained "internal" metadata later in time than the "external" metadata; and (5) this inconsistency in internal and external metadata "does not exist in the absence of backdating efforts." (Italics omitted.)

Based upon this evidence and upon the fact that there are no references in any of the thousands of text messages exchanged between the respondent and Fahey to any of the five disputed documents, the hearing panel found that the respondent had repeatedly produced false documents to the ADO and engaged in a deliberate, multi-year effort to deceive the disciplinary authority.

The PCC found that the respondent violated Rules 3.4(b) and 8.1(a) by, inter alia, failing to preserve evidence and by falsifying evidence provided to the ADO. The hearing panel specifically found that the respondent violated Rules 3.4(b) and 8.1(a) when he backdated documents and produced them to the ADO in his defense, and thereafter altered metadata in an attempt to make such documents appear authentic. These conclusions are supported by clear and convincing evidence. The respondent's argument that there was no evidence that he destroyed or spoliated evidence is belied by the record, as is the respondent's suggestion that he was somehow unfairly denied the ability to defend himself.

Regarding the Rule 8.1(a) violation, we note that the respondent devotes a considerable number of pages in his brief, without citation to the record, to

arguing that the PCC relied on a flawed expert report that should not have been admitted. On May 11, 2023, we granted the ADO's motion to strike pages 24-27 of the respondent's brief, and, accordingly, do not address the arguments presented there. We also conclude that the respondent's argument that modifying evidence does not violate Rule 8.1(a)'s proscription against making "a false statement of material fact" is without merit, and warrants no further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

B. Sanction

We retain authority to determine the sanction for a violation of the rules governing attorney conduct. See O'Meara's Case, 164 N.H. 170, 176 (2012). In determining a sanction, we focus not on punishing the offender, but rather on protecting the public, maintaining public confidence in the bar, preserving the integrity of the legal profession, and preventing similar conduct in the future. See Salomon's Case, 171 N.H. at 706. We judge each attorney discipline case upon its own facts and circumstances, taking into account the severity of the misconduct and any mitigating circumstances appearing in the record. Id. "The gravity of unprofessional conduct is not determined solely by the number of rules broken or by the particular rules violated, but is determined largely with reference to the attorney's behavior." Morgan's Case, 143 N.H. 475, 477 (1999) (quotation omitted).

The factors we consider when imposing sanctions after a finding of lawyer misconduct are: (1) the duty violated; (2) the lawyer's mental state; (3) the potential or actual injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. See Salomon's Case, 171 N.H. at 706. When applying these factors, we first categorize the respondent's misconduct and identify the baseline sanction. See Conner's Case, 158 N.H. 299, 303 (2009). Once the baseline sanction is determined, we then consider the effect of any aggravating or mitigating factors on the ultimate sanction. Salomon's Case, 171 N.H. at 706.

Regarding the first prong, we agree with the PCC that the respondent violated his duties to the public and the legal profession. He failed to maintain the integrity of the profession when he failed to act with honesty and integrity and, as the hearing panel found, engaged in "a deliberate, multi-year effort to deceive the disciplinary authority." This conduct included failing to preserve evidence and falsifying evidence provided to the ADO.

Regarding the second prong, we likewise agree with the PCC that the respondent's mental state was "knowing and intentional." The respondent took many actions in the course of his "deliberate, multi-year effort to deceive the disciplinary authority" with the objective of covering up the fact that he had violated the conflict of interest rules during his representation of Fahey. He fabricated, back-dated, and produced to the ADO three letters to Fahey during

5

the ADO's investigation into the conflict of interest matter. Later, he altered metadata to conceal his original fabrication by changing the "created dates" on these letters. He downloaded special software to change metadata and researched how to alter metadata. These actions demonstrate intentional, deliberate, and calculated conduct.

Turning to the third prong, we consider the actual or potential injury caused by the respondent's misconduct and agree with the PCC that the respondent's conduct in obstructing the disciplinary process could undermine the public's trust in the legal profession. As a member of the PCC observed at oral argument before the PCC, "the Berriman Report and the spoliation of evidence, in my mind . . . is one of the most significant violations I have seen in decades of practice before the ADO before joining this committee. To create evidence and submit it to the disciplinary authority, it's difficult for me to imagine something worse for a lawyer to do." We conclude that the respondent's multi-year effort to deceive the disciplinary authority is itself sufficient to warrant disbarment. See Budnitz' Case, 139 N.H. at 493 (explaining that "[l]ying to or attempting to mislead the committee in an attempt to cover up misdeeds evidences serious disregard for the institutions the respondent as an attorney has sworn to protect and uphold" (quotation and brackets omitted)). Before deciding on the ultimate sanction, however, we must review any aggravating and mitigating factors. Salomon's Case, 171 N.H. at 706.

The PCC found that the aggravating factors include, among other things, the respondent's: (1) dishonest or selfish motive; (2) pattern of misconduct; (3) multiple violations of the Rules; (4) bad faith obstruction of the disciplinary proceeding; (5) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; and (6) refusal to acknowledge the wrongful nature of his conduct. The PCC also found the following mitigating factors: (1) no prior disciplinary violations; (2) evidence of the respondent's positive reputation in the community and character; (3) the respondent has contributed to the legal profession as a whole and provided evidence of selfless assistance to many clients; and (4) the respondent suffered from personal and/or emotional problems during the relevant time period that may have contributed to his misconduct.

We agree that these aggravating and mitigating factors apply, and we conclude, as did the PCC, that the proper sanction is disbarment. Although there are some mitigating factors present, we conclude that the aggravating factors far outweigh the mitigating factors, and that the mitigating factors do not warrant a downward departure to a sanction other than disbarment.

For the foregoing reasons, we order the respondent disbarred, and we order him to pay all costs associated with the investigation and prosecution of this matter.  See Sup. Ct. R. 37(19).

So ordered.

MACDONALD, C.J., and BASSETT and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

7